IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01528-PAB-MEH

GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA f/k/a FULCRUM
INSURANCE COMPANY, an Arizona corporation,

      Plaintiff,

v.

CENTURY SURETY COMPANY, an Ohio corporation,

      Defendant.
_____

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT
_____

      This matter comes before the Court on defendant Century Surety Company's

("Century") Motion for Summary Judgment [Docket No. 8] and plaintiff General Security

Indemnity Company of Arizona f/k/a Fulcrum Insurance Company's ("General Security")

Cross-Motion for Summary Judgment [Docket No. 16].  The Court's jurisdiction is

premised upon diversity of citizenship with an amount in controversy in excess of the

statutory minimum under 28 U.S.C. § 1332.

## I.  BACKGROUND

      This case involves a disagreement over the coverage terms of an insurance

policy.  The relevant facts are few and are not in dispute.  Century and General

Security, both insurance companies, issued policies of insurance to Dawson Ranch,

LLC ("Dawson Ranch"), a real estate developer.  *See* Final Pretrial Order [Docket No.

46] at 3.  These policies ran consecutively; Century's policy was effective May 3, 2001

to May 3, 2002, and General Security's policy was effective May 3, 2002 to May 3, 2003. *See id.*

Dawson Ranch sold unimproved lots located in Cañon City, Colorado, to CB Builders, on which CB Builders constructed residential properties. *See* Century's Mtn. for Sum. J. [Docket No. 8] ("Century Mtn.") ¶¶ 6-7; General Security's Resp. to Century's Mtn. for Sum. J. [Docket No. 15] ("General Security Resp.") ¶¶ 6-7. In 2006, some of the purchasers of these properties sued CB Builders for alleged defects and damages resulting from, among other things, the movement of the soil under the homes' floors and foundations. *See* Century Mtn. Ex. A-2 at 9-24 ("Underlying Compl."). CB Builders, in turn, filed a third-party complaint against Dawson Ranch and numerous subcontractors who worked on the homes. *See* Century Mtn. Ex. A-2 at 1-8 ("Third-Party Compl."). CB Builders alleged that Dawson Ranch bore responsibility for the problematic soil conditions.

Dawson Ranch tendered this underlying litigation to both General Security and Century. Compl. [Docket No. 1] ¶ 14. Both policies provided that the insurer would defend a lawsuit seeking damages covered under the policy. *See* Century Mtn., Ex. A-4 ("Century Policy") at 12 of 42; General Security Resp., Ex. 1 ("General Security Policy") at 18 of 32. General Security agreed to defend. Century Mtn. ¶ 1; General Security Resp. ¶ 1. Century refused, asserting it had no duty to defend pursuant to the terms of its policy. *See, e.g.*, Century Mtn. at 6-11. An exchange of letters between the insurers (and their attorneys) did not change Century's mind. *See* General Security's Cross-Mtn. for Sum. J. [Docket No. 16] ("General Security Mtn.") Exs. 1-3; Century's

2

Resp. to General Security's Cross-Mtn. for Sum. J. [Docket No. 27] ("Century Resp.") Ex. A-5.  General Security then filed the present suit against Century, alleging that Century had a duty to defend and indemnify Dawson Ranch in the underlying litigation and "seek[ing] damages for equitable contribution, indemnity, and/or reimbursement from Century for its equitable share of the defense costs paid to defend [Dawson Ranch] . . . and any monies paid to settle the" underlying litigation.  Compl. at 1.

Soon after the complaint was filed, Century filed a motion for summary judgment asking the Court to determine, as a matter of law, that it had no duty to defend or indemnify Dawson Ranch.  *See* Century Mtn.  General Security responded with a motion for summary judgment of its own, arguing that Century did, in fact, owe Dawson Ranch such duties.  *See* General Security Mtn.  General Security also argued that Century's refusal to defend "lacked substantial justification" and therefore entitled General Security to its attorneys' fees and costs in pursuing contribution.  *See id.*  Both motions have been fully briefed and are ripe for decision.

## II.  ANALYSIS

### A.  Legal Standards

Summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). The parties agree that Colorado law controls their dispute, so that is the law I will apply.

*See Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 832 (10th Cir. 2005) (court need not address choice of law issues *sua sponte* (citing *In re Korean Air Lines Disaster*, 932 F.2d 1475, 1495 (D.C. Cir. 1991))).  Under Colorado law, "[t]he interpretation of an insurance policy, like any written contract, presents a question of law and, therefore, is appropriate for summary judgment."  *Tynan's Nissan, Inc. v. American Hardware Mut. Ins. Co.*,  917 P.2d 321, 323 (Colo. App. 1995) (citing *Bumpers v. Guarantee Trust Life Insurance Co.*, 826 P.2d 358 (Colo. App. 1991)).

Insurance policies are construed using general principles of contract interpretation.  *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991).  A court must read the policy as a whole, rather than in isolation, giving the words of the policy "their plain and ordinary meaning, unless contrary intent is evidenced in the policy."  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).  Courts should not rewrite the policy to either extend or limit coverage beyond the scope of that contracted for.  *Id.*  "However, because of the unique nature of insurance contracts and the relationship between the insurer and insured, courts do construe ambiguous provisions against the insurer and in favor of providing coverage to the insured."  *Id.*  Terms are ambiguous when they can be read to have more than one reasonable interpretation.  *Hecla*, 811 P.2d at 1090.

"An insurer seeking to avoid its duty to defend an insured bears a heavy burden." *Id.* at 1089.  Colorado follows the so-called "four corners" or "complaint" rule, which provides that in determining whether an insurer must defend its insured, "courts must look no further than the four corners of the underlying complaint."  *Cyprus Amax*, 74

4

P.3d at 299 (citing *Hecla*, 811 P.2d at 1089).  The complaint rule "operates to cast a broad net, such that when the underlying complaint alleges *any facts* or claims that might fall within the ambit of the policy, the insurer must tender a defense."  *Id.* at 301 (emphasis in original).  In other words,

> [a]n insurance company has a duty to defend if the allegations in the complaint could impose liability under the policy.  Alternatively, an insurance company has a duty to defend if the allegations in the complaint state a claim which is potentially or arguably within the policy coverage or if there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded.

*General Sec. Indem. Co. of Arizona v. Mountain States Mut. Cas. Co.*, 205 P.3d 529, 532-33 (Colo. App. 2009) (citations and quotations omitted); *see also Hecla*, 811 P.2d at 1089 ("'Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.'" (quoting *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984))).  This standard applies whether the insurer contends that the insured's actions did not trigger coverage in the first instance or that, even if the insured would otherwise be covered, a specific policy exemption applies.  *See Hecla*, 811 P.2d at 1090 ("The insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy.").

In contrast to the duty to defend, which exists if "the alleged facts even potentially fall within the scope of coverage," the duty to indemnify is triggered only

where "the policy actually covers the alleged harm." *Constitution Assocs. v. New Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996) (citing *Hecla*, 811 P.2d at 1089-90).  For this reason, resolution of the insurer's indemnification obligation generally must wait until the insured's liability has been determined.  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 621 (Colo. 1999). "However, once an insurer has prevailed on the duty to defend, the issue of the duty to indemnify is ripe for resolution because 'where there is no duty to defend, it follows that there can be no duty to indemnify.'" *Id.* (quoting *Constitution Assocs.*, 930 P.2d at 563).

### B.  Application

Both motions for summary judgment focus on Century's arguments for why it owes no duty to defend Dawson Ranch.  Those arguments are three: (1) the allegations in the underlying complaint do not trigger coverage in the first instance, because they do not describe an "occurrence"; (2) even if an occurrence was alleged, coverage is excluded under the policy's "real estate operations" endorsement; and (3) because Century's is an "excess" coverage policy, and because General Security is already defending Dawson Ranch, Century owes no independent duty to defend.  I consider these arguments in turn.

#### 1.  "Occurrence"

Century contends that the underlying allegations against Dawson Ranch, which focus on Dawson Ranch's purported failure to disclose soil problems with the property it sold CB Builders, do not even arguably fall within the scope of the policy and thus do not trigger the duty to defend.  Century's policy provides coverage for "'bodily injury' and

'property damage' only if . . . [such injury or damage] is caused by an 'occurrence.'"
Century Policy at 12 of 42.  The parties do not dispute that the relevant injury is the
damage to the homeowners' houses.  Century Mtn. at 4 ("The Underlying Plaintiffs are
homeowners who sued CB Builders, Inc., the builder-vendor of the newly built homes
that have allegedly incurred damage due to construction defects."); General Security
Resp. at 6 ("[T]he plaintiffs in the Underlying Action sought damage for soil movement
caused to their houses, which is the damage CB Builder[s] sought to recover from
Dawson Ranch.").  The issue, then, is whether these alleged damages were the result
of an "occurrence."

The policy defines an "occurrence" as "an accident, including continuous or
repeated exposure to substantially the same general harmful conditions."  Century
Policy at 32 of 42.  The term "accident," however, is not defined in the policy.  In the
context of commercial general liability insurance policies, Colorado courts have
generally defined an "accident" as "'an unanticipated or unusual result flowing from a
commonplace cause.'" *Mountain States Mut. Cas. Co.*, 205 P.3d at 534 (quoting *Hoang
v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028, 1034 (Colo. App. 2005), rev'd
on other grounds, *Hoang v. Assurance Co. of Am.*, 149 P.3d 798 (Colo. 2007), and
citing additional cases).  Conversely, "'[a]n effect which is the natural and probable
consequence of an act or course of action is not an accident.'"  *Carroll v. CUNA Mut.
Ins. Co.*, 894 P.2d 746, 752 (Colo. 1995) (quoting with approval *Landress v. Phoenix
Mut. Life Ins. Co.*, 291 U.S. 491, 501 n.2 (1934) (Cardozo, J., dissenting)).  "[I]t is
customary to look at the casualty from the point of view of the insured to see whether

. . . it was unexpected, unusual, and unforseen." *Id.* at 751 n.5 (quoting 1A John A.

Appleman and Jean Appleman, *Insurance Law and Practice* § 360 (1981)).

General Security argues that Colorado law requires more than just a probable

consequence to take an event outside the definition of an "accident."  Relying on *Hoang*

*v. Monterra Homes (Powderhorn) LLC*, General Security argues that unless the insured

expects or intends its conduct to cause the damages alleged, the conduct was

accidental.  General Security Resp. at 4-5 (citing *Hoang*, 129 P.3d at 1034 ("[I]t is the

'knowledge and intent of the insured' that make injuries or damages expected or

intended rather than accidental.")); *see also* General Security Mtn. at 5.  This definition

is presumably more favorable to insureds, as it provides coverage for conduct with a

foreseeable risk of damage so long as the damage itself was not actually intended or

expected.  *See Hoang*, 129 P.3d at 1034 (conduct was accidental even though insured

may have known of "substantial risk that damages would occur" because the damage

was not expected or intended).  Indeed, as the underlying complaint does not allege

that Dawson Ranch expected or intended the damage to the homes, under *Hoang*, it is

likely that Dawson Ranch's actions would be covered occurrences.

However, as a division of the Colorado Court of Appeals recently observed,

*Hoang* is not relevant to the interpretation of "occurrence" provisions like the one at

issue here.  *See Mountain States Mut. Cas. Co.*, 205 P.3d at 537.  *Hoang* relied on

*Hecla Mining* for its "accident" definition, *id.*, and *Hecla* involved an insurance policy that

expressly considered the insured's intent.  The *Hecla* policy defined an "occurrence" as

> an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage, *neither expected nor intended from the standpoint of the insured.*

811 P.2d at 1086 (emphasis added).  It was in this context that the *Hecla* court focused on the insured's intent or expectation of damages.  Here, by contrast, the "occurrence" definition in the Century policy is concerned only with whether there was "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Century Policy at 32 of 42.  It makes no mention of expectations or intentions.

Indeed, the Century policy separately provides that it does not apply to bodily injury or property damage "expected or intended from the standpoint of the insured."  *Id.* at 12 of 42.  Interpreting the "occurrence" provision to focus on the expectation of injury would make these provisions essentially redundant, as both would focus on an insured's intent.  "Under Colorado law, we must avoid reading an insurance policy so as to render some provisions superfluous."  *Mountain States Mut. Cas. Co.*, 205 P.3d at 537 (citing *Holland v. Bd. of County Comm'rs*, 883 P.2d 500, 505 (Colo. App. 1994)).  For these reasons, Dawson Ranch's expectation regarding or intent to cause damage is not relevant to the "occurrence" analysis.  *See id.* at 533, 537 (interpreting "occurrence" provision similar to Century provision and finding that the "interpretation   . . . need not be limited to the expectations or intentions of the insured").  Rather, the question is whether the allegations in the underlying complaint indicate that the damage to the homes was an "unanticipated or unusual result" – as opposed to a "natural and probable consequence" – of Dawson Ranch's conduct.

9

CB Builders' third-party complaint asserts four claims against Dawson Ranch: (1)

negligent representation; (2) violation of Colo. Rev. Stat. § 6-6.5-101[1]; (3) contribution;

and (4) indemnity.  *See* Third-Party Compl.  The specific factual allegations focus

primarily on Dawson Ranch's failure to disclose soil problems.  The relevant allegations

are as follows:

> 15.  CB Builders, Inc. purchased certain real property . . . from the developer, Dawson Ranch, LLC.  Dawson Ranch, LLC represented, among other things, that it had no knowledge that sliding, settling, upheaval, movement or instability of earth or expansive soil existed on such property.
>
> . . . .
>
> 33.  Dawson Ranch, LLC caused or permitted representations to be made to . . . CB Builders, Inc., that Dawson Ranch, LLC had no knowledge that sliding, settling, upheaval, movement or instability of earth or expansive soil existed on the real property purchased by CB Builders, Inc.
>
> 34.  . . . CB Builders, Inc. alleges, on information and belief, that Dawson Ranch, LLC had knowledge that sliding, settling, upheaval, movement or instability of earth or expansive soil existed on such real property.
>
> 35.  In causing or permitting the foregoing information to be communicated to . . . CB Builders, Inc., Dawson Ranch, LLC gave false information to CB Builders, Inc. and/or violated [Colo. Rev. Stat.] § 6-6.5-101.
>
> 36.  CB Builders, Inc. reasonably relied upon such information as provided by Dawson Ranch, LLC.
>
> . . . .

---

[1]  Colo. Rev. Stat. § 6-6.5-101 requires that, where a new residence is constructed on a site with "significant potential for expansive soils," the developer or builder must provide the purchaser a report detailing issues associated with such soils.

10

40.  . . . CB Builders, Inc. alleges, upon information and belief, that Dawson Ranch, LLC recognized that homes were to be constructed on the real property purchased by CB Builders, Inc., which real property had a significant potential for expansive soils and was susceptible to other soil instability.

41.  Dawson Ranch, LLC violated [Colo. Rev. Stat.] § 6-6.5-101(1).  CB Builders, Inc. was never provided with a clear and understandable summary report of the analysis and site recommendations.

*See* Third-Party Compl.

Century argues that these factual allegations do not trigger coverage because such allegations assert Dawson Ranch's knowing concealment of the soil problems. Century claims that such knowledge by Dawson Ranch causes the resultant damage to the houses to fall outside of the definition of an "accident."  Century Mtn. at 8.  General Security disputes that the third-party complaint definitively alleges knowing conduct. Specifically, General Security notes that key allegations – that Dawson Ranch "had knowledge" of the soil problems, Third-Party Compl. ¶ 34, and that it "recognized" that homes would be built on the property, *id.* ¶ 40 – were made "on information and belief." General Security contends that such a qualifier means that CB Builders was alleging "that it thought Dawson Ranch had or may have had knowledge."  General Security Resp. at 5-6; *see also* General Security Mtn. at 6 ("The allegations . . . simply state that Dawson Ranch may have known, not that it did indeed know . . .").  But "information and belief" does not mean "is or might be."  Rather, such an allegation is "based on secondhand information that the declarant believes to be true."  Black's Law Dictionary 795 (8th ed. 2004).  The "information and belief" allegations, fairly read, mean that "CB Builders believes Dawson Ranch did have knowledge," not that "Dawson Ranch had or may have had knowledge."

11

General Security also argues that Century too narrowly focuses on the negligent representation claim in the third-party complaint (which contains the bulk of the specific factual allegations), and contends that the assertion of contribution and indemnity claims – in which CB Builders sought damages from Dawson Ranch for its negligence or fault generally – trigger the duty to defend.  General Security Resp. at 4-5; General Security Mtn. at 6-7.[2]   However, under Colorado law, "[i]t is . . . the factual allegations in the complaint, and not the legal claims, that determine an insurer's duty." *Gerrity Co., Inc. v. CIGNA Prop. & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo. App. 1993).  The contribution and indemnity claims assert no additional facts.  They simply state that if any of the allegations by the homeowners against CB Builders are proved true, CB Builders is entitled to contribution and indemnity for damages "which were the result of the negligence, fault, or breaches by" Dawson Ranch and the other third-party defendants.  Third-Party Compl. ¶¶ 44, 46.  These claims therefore do not add anything to the Court's analysis.  For the same reason, the fact that CB Builders has styled its misrepresentation claim one for "negligent representation" is irrelevant.  *See DCB Const. Co. v. Travelers Indem. Co. of Ill.*, 225 F. Supp. 2d 1230, 1231 n.1 (D. Colo. 2002) (inclusion of negligence claim does not require insurance company to provide coverage when factual allegations make clear that claim is not really one for negligence); *W. Am. Ins. Co. v. Maestas*, 631 F. Supp. 1565 (D. Colo. 1986) (underlying complaint asserting negligence theory did not trigger duty to defend when

---

[2]   General Security does not contend that the claim for violation of Colo. Rev. Stat. § 6-6.5-101 might trigger coverage.  The Court cannot make a party's arguments for them, *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1112 (10th Cir. 2009), and thus I will focus only on the contribution and indemnity claims.

factual allegations were of intentional conduct).   I am constrained to consider only whether the specific factual allegations, outlined above, arguably are within the policy's coverage.

Under these circumstances, Century owed no duty to defend Dawson Ranch. The relevant factual allegations in the third-party complaint all pertain to Dawson Ranch's knowing misrepresentation of the soil conditions, which eventually caused damage to the homes.  The fact that there are titular negligence claims is irrelevant.  As Dawson Ranch is alleged to have known of the problems, and to have been aware that homes would be built on the property, the damage was not unexpected or unanticipated from its perspective.  Rather, the damage was the "the natural and probable consequence of" Dawson Ranch's alleged failure to disclose the soil instability.  *Carroll*, 894 P.2d at 752.  Thus, there was no alleged "occurrence" sufficient to trigger coverage under the policy.  *See M.L. Foss, Inc. v. Liberty Mut. Ins. Co.*, 885 P.2d 284, 285 (Colo. App. 1994) (claims of intentional or knowing failure to disclose material facts in connection with sale of property not an "occurrence" under similar policy definition).[3]  As the underlying complaint does not allege any claim arguably within the policy's coverage, Century owed no duty to defend.

---

[3]  *M.L. Foss* also held that the underlying complaint did not allege "property damage" within the meaning of the relevant policy.  885 P.2d at 285-86.  In *Cyprus Amax*, the Colorado Supreme Court discussed *M.L. Foss* in the context of this property damage issue and asserted that to the extent the reasoning in *M.L. Foss* was inconsistent with its opinion, it disapproved of the case.  74 P.3d at 305 n.7.  The Court does not read this analysis in *Cyprus Amax* to disturb *M.L. Foss*'s alternative holding – relevant here – that knowing misrepresentation does not constitute an "occurrence."

### 2.   Remaining Arguments

Having concluded that the underlying complaint did not allege an occurrence, I need not consider the parties' additional arguments concerning Century's duty to defend.  Further, "where there is no duty to defend, it follows that there can be no duty to indemnify."  *Compass Ins. Co.*, 984 P.2d at 621.  Century is therefore entitled to summary judgment in its favor on the questions of both its duty to defend and its duty to indemnify.  Finally, because Century was justified in denying coverage, its defense of this lawsuit did not, by definition, "lack substantial justification" and thus General Security is not entitled to its attorneys' fees.

## III.  CONCLUSION

For these reasons, it is

**ORDERED** that Century Surety Company's Motion for Summary Judgment [Docket No. 8] is GRANTED.  It is further

**ORDERED** that General Security Indemnity Company of Arizona f/k/a Fulcrum Insurance Company's Cross-Motion for Summary Judgment [Docket No. 16] is DENIED.  It is further

**ORDERED** that this matter, and all claims asserted therein, is dismissed with prejudice.  The Clerk shall forthwith enter judgment in favor of defendant Century Surety Company and against plaintiff General Security Indemnity Company of Arizona

f/k/a Fulcrum Insurance Company.  Defendant is entitled to its costs.  *See*

D.C.COLO.LCivR 54.1 and Fed. R. Civ. P. 54(d)(1).


     DATED August 3, 2009.

                       BY THE COURT:


                       s/Philip A. Brimmer
                       PHILIP A. BRIMMER
                       United States District Judge